**In the Matter of the ADOPTION OF Peter Kelly McKINSTRAY and Melody Dawn McKinstray, Minors,**

v.

**Dale R. McKINSTRAY, Appellant.**

**No. 17035.**

Supreme Court of Utah.

April 13, 1981.

Melvin G. Larew, Jr., Salt Lake City, for appellant.

Gary L. Paxton, Salt Lake City, for respondents.

HOWE, Justice:

This appeal is from a decree declaring that the appellant, the natural father of the two McKinstray children, had abandoned them, and allowing their stepfather to adopt them.

Appellant, Dale McKinstray, and his former wife, Nadine Suesserman, are the parents of a daughter and son, ages 13 and 12 at the time this proceeding was brought. A decree of divorce granted in 1970 in Wyoming awarded custody of the children to Nadine, gave McKinstray reasonable visitation privileges, and imposed upon him a child support obligation that would increase from $30 per month for each child the first year to $50 after a period of four years. Nadine and the children moved from Jackson, Wyoming, where the family was living, to California and then to Colorado and Missouri. Nadine remarried and in 1979 came with her family to make a home in Utah. McKinstray and his second wife also moved from Jackson; since 1973 they have lived in Worland, Wyoming, 200–250 miles from Jackson. Both sets of grandparents continued to live in Jackson for several years after the McKinstray divorce.

Problems arose with visitation and support within a short period of time. McKinstray lost contact with his children and became irregular in his support payments. His last payment was made in April 1973. Although he was not kept informed of the children's addresses as they moved from place to place, the children spent their summer vacations for several years in Jackson with the maternal grandparents, and McKinstray had reason to know of their presence there since members of his family occasionally saw them.

In 1979 Nadine and her second husband petitioned the district court in Salt Lake County, Utah, for a decree of abandonment divesting appellant of his parental rights and for an order permitting the adoption of the children by their stepfather, Irwin R. Suesserman. Appellant appeared and contested the action. The court found that appellant, although having the ability to pay support for his children after April 1973, had failed to do so, that he had failed, or had made only token efforts, to communicate with them, and that he had failed to maintain a parental relationship with them, all without good cause or justification. The court accordingly concluded that he had deserted and abandoned the children and ordered the permanent termination of all his parental rights.

Following the entry of the court's order, appellant moved for a new trial on the basis of what he characterized as newly discovered evidence in the form of testimony from a former friend of the family who was found to be living in Arizona. Appellant contended that this evidence could not have been discovered earlier despite his exercise of due diligence in preparing for the trial, and that the evidence was material and was likely to have changed the result of the trial. The trial court denied his motion, and he seeks remand for the taking of the proffered additional testimony.

■ As held in *Hlubeck v. Beeler*, 214 Minn. 484, 9 N.W.2d 252 (1943), when it appears that the degree of activity or inquiry which led to the discovery of a witness or evidence after trial would have produced the same evidence had it been exercised prior thereto, due diligence has not been exercised. See also *Powers v. Gene's*

*Building Materials, Inc.*, Utah, 567 P.2d 174 (1977); *Shields v. Ekman*, 67 Utah 474, 248 P. 122 (1926). Appellant located the witness whose testimony he proffered as newly discovered evidence by telephoning her residence in Arizona. The record does not disclose why with the same amount of diligence the witness could not have been located prior to trial.

Appellant has also failed to demonstrate that there is a likelihood that the court's judgment would have been different had the proffered evidence been considered. Such a showing is required to warrant the granting of a motion for a new trial because of newly discovered evidence. *Universal Investment Co. v. Carpets, Inc.*, 16 Utah 2d 336, 400 P.2d 564 (1965). The evidence sought to be introduced by appellant concerned Nadine's desire that he not have contact with his children, not his own efforts to communicate with them. Since the determinative issue before the trial court involved his efforts to maintain a parental relationship with his children, the proffered evidence would not, have affected the outcome. The trial court did not abuse its discretion in the denial of the motion for a new trial.

Appellant also seeks remand or reversal based on insufficiency of the evidence and on his assertion that the trial court should be required, as requested by him, to make additional findings regarding the credibility of witnesses.

The statutory basis for a judicial determination that a child may be adopted without the consent of a parent who has failed to support or communicate with him is § 78–30–5, U.C.A. 1953, as amended, which provides:

A child may be adopted without the consent of the parent or parents, when the district court in which the proceedings are pending determines, after notice to such parent or parents in a manner determined by the court, that the parent or parents, having the ability and duty to do so, have not provided support and have made no effort or only token effort without good cause to maintain a parental relationship with the child. It is a rebut-

table presumption that no effort has been made if the parent or parents have failed to support and communicate with the child for a period of one year or longer. This Court in *Robertson v. Hutchison*, Utah, 560 P.2d 1110, 1112 (1977), stated that because the law should be reluctant to interfere with or destroy the parent-child relationship, abandonment will be found "only when the evidence is clear and convincing that the parent has either expressed an intention, or so conducted himself as to clearly indicate an intention, to relinquish parental rights and reject parental responsibilities to his child." See also *Hall v. Anderson*, Utah, 562 P.2d 1250 (1977).

Regardless of the strict evidentiary standard required in an abandonment case, the issues in most instances, including the present case, are factual, and as stated in *Hall v. Anderson*, supra,

if the evidence is such that reasonable minds may differ as to the conclusion to be drawn therefrom, it is the prerogative of the trier of facts to make the determination; and this court should not interfere with that prerogative by disagreeing with the determination thus made. [562 P.2d at 1251.]

It is undisputed in the instant case that appellant failed to pay child support for over six years despite his ability to do so. Nor is it disputed that over the same period of time he failed to maintain a parental relationship with his children. The issues presented for the determination of the trial court were whether appellant's lack of communication with his son and daughter and his failure to expend reasonable efforts to locate them were without good cause and whether his conduct evidenced an intention to abandon the children.

█ We have reviewed the record and find it amply supports the trial court's finding adverse to appellant. There was testimony that after McKinstray moved to Worland he did not contact any of the grandparents in Jackson to find where his children were. He justified his inaction by saying his attorney had advised him in 1973 or 1974 to "let Nadine calm down a little

more," and that he thought it would be futile to inquire of the maternal grandmother as to the children's whereabouts because he assumed she would not tell him where they were. He decided to leave it up to Nadine and the children to contact him in response to his failure to make child support payments. Because he was "disgusted with the court system" he refused to take any legal action to establish visitation with the children. Although he testified that he looked in the telephone books of the various cities he passed through in his employment as a trucker to determine if his children could be located in that manner, such efforts towards communicating with them clearly represent tokenism and nothing more. McKinstray's six years of neglect without a persuasive showing of good cause justifies the action of the trial court in allowing the adoption of the children by the stepfather who had made a home and provided support for them.

Appellant also argues that a more stringent standard of proof requires a correspondingly more stringent standard of appellate review and that a more lax standard results in a denial of due process. There was competent evidence adduced which the trial court could have found clear and convincing to support its findings, and there is no foundation on which to base a due process objection.

Finally, appellant recognizes that his assertion that the trial court should be required to make findings specifically on the credibility of witnesses "is a novel one and . . . may be without merit." Appellant asserts that without findings regarding credibility of witnesses the losing party cannot know which facts were determinative of the outcome. Appellant's suggestion is indeed novel and unpersuasive. It is obvious that a fact-finder must weigh conflicting evidence by assessing the credibility of the witnesses. Credibility itself, however, is not a factual issue that is appropriately the subject of the court's findings. Rather, the findings of ultimate facts implicitly reflect consideration of the believability of the witnesses' testimony.

Having considered the arguments of appellant and finding them to be without substance, we affirm the decree and order of the court below. Costs awarded to respondent.

MAUGHAN, C. J., and HALL, STEWART and OAKS, JJ., concur.